UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DIANA PENDLAND, | : | Case No. 1:08-cv-485 |
| | : | |
| Plaintiff, | : | Barrett, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED.**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled," and therefore, unentitled to a period of disability, disability income benefits and supplemental security income. (*See* Administrative Transcript ("Tr.") 9-21).

**I. FACTS AND PROCEDURAL HISTORY**

In September 2004, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of April 4, 2003, due to neck pain, back pain, heart problems, depression, and anxiety with mood swings. (Tr. 45-47, 51).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On February 3, 2005, Plaintiff's claims were denied on the state agency level. (Tr. 34-37). On March 21, 2005, Plaintiff requested reconsideration. (Tr. 38). On May 26, 2005, Plaintiff's claims were denied on reconsideration. (Tr. 40-42). On June 10, 2005, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 43). A hearing was held on March 1, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 523-564). A vocational expert ("VE"), Dr. George Parsons, was also present and testified. (Tr. 554-563).

On January 10, 2008, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 9-21). That decision became Defendant's final determination upon denial of review by the Appeals Council on June 6, 2008. (Tr. 5-7).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the nondisability requirements of the Social Security Act on the alleged onset date and continues to satisfy those requirements through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease of the cervical and lumbar spines, coronary artery disease with stenting, mood disorder, and borderline intellectual functioning and considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal, either singularly or in combination, one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. Claimant's allegations regarding her limitations are not totally credible.

6. The claimant has the residual functional capacity set forth in Exhibit 13E.

7. The claimant is unable to perform any of her past relevant work.

8. The claimant was a younger individual on her alleged onset date.

9. The claimant has the equivalent of a high school education.

10. The claimant has no transferable skills from any past relevant work.

11. Considering the claimant's age, education, and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the economy.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 20-21). In sum, the ALJ concluded that Plaintiff was not entitled to a period of disability, disability insurance benefits during the closed period, or supplemental security income. (Tr. 21).

On appeal, Plaintiff argues that the ALJ erred: (1) in failing to give "good reasons" under 20 C.F.R. 404.1527(d) to reject conclusions of disability from treating sources; (2) in failing to give the treating doctors the most weight in the record under 20 C.F.R. 404.1527(d), and Ruling 96-2p (1996); (3) in failing to find the claimant had limited ability to reach and handle due to the neck and shoulder impairments and the need to alternate sitting and standing to do unskilled work; (4) in determining claimant's mental residual functional capacity with regard to her nervous and mental impairment; (5) in determining claimant's level of credibility with regard to her pain and subjective

complaints; (6) in relying on erroneous or improper hypotheticals posed to the vocational expert.

Upon careful review, and for the reasons that follow, the undersigned finds Plaintiff's first four assignments of error, insofar as Plaintiff asserts error in the assessment of medical source evidence in determining her RFC, to be dispositive and further concludes that the ALJ improperly weighed the medical evidence of record.

## II. STANDARD OF REVIEW

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted).

## III. ASSIGNMENTS OF ERROR

In her first four assignments of error, Plaintiff essentially challenges the ALJ's determination of her RFC. Plaintiff contends that the ALJ erred by rejecting the opinions of her treating physicians without providing "good reasons" for doing so, and failed in assessing the weight of such opinions.

As a general rule in social security disability cases, opinions of treating doctors are given greater deference than opinions given by non-treating doctors. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This rule is "commonly known as the treating physician rule." *Id*. (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004)). The rationale behind the treating physician rule is that, "treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[.]'" *Rogers*, 486 F.3d at 242 (citing 20 C.F.R. § 416.927(d)(2)).

In determining the matter, an ALJ must specifically set forth "good reasons" for discounting the treating physician's conclusions. *Rogers*, 486 F.3d at 242. Such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (citing Soc. Sec. Rul. 96-2p, at *4). An ALJ's failure to explain "precisely how those

reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir. 1999)).

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). Under that regulation, "the opinion of a treating physician is entitled to controlling weight if such opinion (1) 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques,' and (2) 'is not inconsistent with the other substantial evidence in [the] case record.'" *Meece v. Barnhart*, 192 Fed.Appx. 456, 460 (6th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(2)).

However, even if a treating physician's opinion is not entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2), the ALJ must determine what weight to give differing medical conclusions by applying the remaining factors listed in 20 C.F.R. § 404.1527(d). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece*, 192 Fed.Appx. at 461 (citing 20 C.F.R. §§404.1527(d)(2)-(d)(6)).

Here, Plaintiff argues that the ALJ erred in finding that the opinions offered by her

treating doctors, Dr. Pirnat, Dr. Kanabar and Dr. Vickery, were unreliable. (Tr. 18). Further, Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Dinesh Nayak.

### Dr. Kanabar

Dr. Kanabar, Plaintiff's treating neurologist, completed an assessment of Plaintiff's ability to perform work related activities on August 8, 2005. (Tr. 412-416). Dr. Kanabar diagnosed Plaintiff with fibromyalgia, cervical disc disease, cervical strain, lumbosaceral disc disease, migranes, hypertension, hypercholesterolemia, coronary artery disease, depression, and thoracic strain. (Tr. 412). In support of his opinions, Dr. Kanabar noted multiple myofascial tender regions over Plaintiff's neck and arms, as well as weakness of limbs. (Tr. 412).

Dr. Kanabar concluded that Plaintiff's condition required that she lie down for up to three hours, two to three times per day. (Tr. 412). He concluded that Plaintiff: could only sit up to fifteen minutes continuously for a total of forty-five minutes per workday; could stand up to thirty minutes continuously and for a total of an hour per workday; could walk up to fifteen minutes continuously for a total of one hour per workday; could lift and/or carry zero to five pounds frequently and up to ten pounds occasionally; could never lift anything over ten pounds; could occasionally bend, climb and reach; could never squat, balance, stoop, crouch, kneel or crawl; and was restricted from work related stress. (Tr. 412-416).

The ALJ dismissed the opinion of Dr. Kanabar simply because the ALJ believed

the opinion was not reliable, "as explained earlier herein." (Tr. 18). Presumably, the earlier explanation referenced by the ALJ was his dismissal of Dr. Kanabar's diagnosis of fibromyalgia. The ALJ stated:

> A: The American Collage [sic] of Rheumatology Criteria for the Classification of Fibromyalgia classifies a condition as fibromyalgia only if the patient has both widespread pain and also pain in eleven of eighteen tender points, all as defined in the ACR Manual excerpt I have placed in our filed [sic] as Exhibit 10E. The reporting doctors' general statements do not show compliance with these criteria.
>
> B: If either doctor disagrees in his own mind with the ACR criteria above, he has failed to state his own criteria in his submitted materials and has also failed to rule out more common ailments that produce similar symptoms, all as stated in Exhibit 10E herein.

(Tr. 15).

The Sixth Circuit has "recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988) (*per curiam*)). Instead of typical objective signs of impairment, "fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Rogers*, 486 F.3d at 244 (citing *Preston*, 854 F.2d at 820). "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through

objective medical and clinical trials." *Rogers*, 486 F.3d at 244 (citing *Preston*, 854 F.2d at 820; *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D.Ohio 2003)).

The ALJ's rejection of Dr. Kanabar's opinion on the basis of an alleged failure to show compliance with standard testing in rendering a diagnosis of fibromyalgia was error. Dr. Kanabar noted "multiple myofascial tender regions" on the assessment form itself. (Tr. 412). Further, a review of Dr. Kanabar's treatment notes shows, on October 6, 2004, that Dr. Kanabar found "[m]ultiple myofascial trigger points" on his physical examination of Plaintiff. (Tr. 230).

Thus, it cannot be said that Dr. Kanabar's records show a lack of compliance with the ACR Manual because Dr. Kanabar's records reflect assessment of Plaintiff's trigger or tender points. As a result, just as the Sixth Circuit found in *Rogers*, 486 F.3d 243, the ALJ's dismissal of Dr. Kanabar's diagnosis of fibromyalgia "influenced the ALJ's weighing of the treating physician evidence[,]" and such dismissal "was not based on substantial evidence." Because a lack of substantial evidence supports the ALJ's only specifically identified reason for rejecting Dr. Kanabar's opinion, the ALJ erred in finding such opinion "unreliable."

### Dr. Pirnat

Dr. Pirnat, Plaintiff's treating physical medicine and rehabilitation specialist, completed a physical assessment of Plaintiff on July 26, 2005. Dr. Pirnat found that Plaintiff could perform no repetitive bending, no prolonged sitting or standing, no lifting over twenty-five pounds and needs to change positions as needed. (Tr. 335).

The ALJ discounted Dr. Pirnat's opinions for the same reason he discounted Dr.

Kanabar's opinions, *i.e.*, the ALJ determined that Dr. Pirnat's diagnosis of fibromyalgia was not supported by his records. (Tr. 15). Specifically, the ALJ determined that his diagnosis was not made in compliance with the ACR criteria. (Tr. 15).

Again, similar to the analysis of Dr. Kanabar's records above, a review of Dr. Pirnat's records also shows an array of myofascial pain notations. Specifically, on July 26, 2005, the date Dr. Pirnat completed the physical assessment rejected by the ALJ, he noted, "right-sided cervical brachial myofascial pain . . . pain to palpation over the lumbar spinous processes and sacroiliac culcus bilaterally . . . generalized myofascial pain in the neck, shoulders and back." (Tr. 508). Dr. Pirnat's records further show similar generalized myofascial pain notations found in a number of other physical examinations. (*See, e.g.,* Tr. 336, 340, 509).

While Dr. Pirnat's records to do not specifically state that he conducted the series of tender point rests in strict accordance to the ACR criteria, his records do show physical examinations returning results of pain in several of the tender point regions. In light of the physical examination records, a lack of substantial evidence supports the ALJ's determination because it cannot be said that Dr. Pirnat's records show absolute noncomplaince with the ACR criteria. Because a lack of substantial evidence supports the ALJ's only specifically identified reason for rejecting Dr. Pirnat's opinion, the ALJ erred in finding such opinion "unreliable."

Dr. Vickery

Dr. Vickery, a psychiatrist, began seeing Plaintiff in November 2001, and continued treating Plaintiff up until her last visit of record on January 31, 2007. On

January 31, 2007, Dr. Vickery noted her opinion that Plaintiff could not "work in any capacity." (Tr. 457).

The ALJ disregarded Dr. Vickery's opinion that Plaintiff was unable to work, stating that her opinions were unreliable, "as explained earlier herein." However, the only discussion in the ALJ's decision concerning Dr. Vickery's treatment of Plaintiff is limited to the following:

> The claimant began seeing Diane Vickery, M.D., a psychiatrist, for a mood disorder in November 2001. Dr. Vickery's treatment notes from June 2003 through August 2005 show complaints of agitation, irritability, depression, crying spells, sleep disturbance, and mood swings. The claimant reported that she wanted to be left alone and that she had difficulty getting along with others. Dr. Vickery wrote that the claimant was impolite and irritable at times. Although the claimant complained of memory problems, Dr. Vickery described the claimant's memory as quite good.
>
> When last seen on January 31, 2007, the claimant complained of increased depression but objectively seemed somewhat better. However, Dr. Vickery indicated she did not feel the claimant could work in any capacity.

(Tr. 16).

Defendant contends that Dr. Vickery's opinion that Plaintiff could not "work in any capacity" was not a medical opinion and was entitled to no special significance. Specifically, Defendant cites 20 C.F.R. § 404.1527(e), which provides that "a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *See also Kidd v. Comm'r of Social Sec.*, 283 Fed.Appx. 336, 341 (6th Cir. 2008); *Turner v. Comm'r of Social Sec.*, 267 Fed.Appx. 456, 461 (6th Cir. 2008).

-11-

However, the ALJ did not cite such a provision in discounting Dr. Vickery's opinion. Instead, the ALJ simply found Dr. Vickery's opinions unreliable based on reasons not specifically identified, and not otherwise found, in the ALJ's decision. While Dr. Vickery's opinion regarding the ultimate issue of disability was not conclusive or controlling, the ALJ was still required to set forth "good reasons" for discounting such opinion. *See Rogers*, 486 F.3d 242 (stating that one purpose behind the "good reasons" requirement is that it "'lets claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not[']").

Here, no specific reason was presented for rejecting Dr. Vickery's opinion beyond a conclusory statement that such opinion was not reliable. (Tr. 18). Therefore, because the ALJ provided no "good reason" for finding Dr. Vickery's assessment unreliable, a lack of substantial evidence supports such a conclusion.

### Dr. Nayak

Plaintiff also argues that the ALJ erred in dismissing the opinions of Dr. Nayak, Plaintiff's treating primary care physician. Dr. Nayak completed a physical ability assessment form in September 2004, finding Plaintiff limited in her ability to sit, stand and/or walk. (Tr. 127). Dr. Nayak further found Plaintiff moderately limited in her ability to push, pull, bend, handle and perform repetitive foot movements. (*Id.*)

Here, Dr. Nayak's opinion was not one of the medical opinions the ALJ deemed

unreliable. (Tr. 18). Yet, the ALJ stated that Dr. Nayak "provided [Plaintiff] routine medical care but clearly left the treatment of her more severe conditions to the specialists." (Tr. 17). No further statement is provided explaining what weight, if any, was given to Dr. Nayak's opinion. *See Rogers*, 486 F.3d at 242-246 (stating that the requirements of SSR 96-7p not only requires "sufficiently specific" reasons for not according controlling weight to a treating physician's opinion, it also requires an explanation as to "what weight was given the treating opinions").

Thus, the ALJ's decision provides insufficient explanation of the weight accorded Dr. Nayak's opinion. As a result, a lack of substantial evidence supports the ALJ apparent rejection of Dr. Nayak's opinion.

Accordingly, because the ALJ failed to give "good reasons" for rejecting the opinions of Plaintiff's treating doctors, notably Dr. Kanabar, Dr. Pirnat, Dr. Vickery and Dr. Nayak, a lack of substantial evidence supports the ALJ's determination of Plaintiff's RFC. As a result, Plaintiff's first, second, third and fourth assignments of error are sustained.

## IV. REMAND

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider

evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

Here, the ALJ's decision essentially dismissed Plaintiff's diagnosis of fibromyalgia, which, in turn, ultimately influenced the ALJ's determination of Plaintiff's RFC. Further fact-finding is necessary in this case because many of Plaintiff's alleged impairments, and limitations resulting therefrom, were summarily dismissed by the ALJ as not supported by objective evidence. However, the Sixth Circuit has noted that, "figromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objective alarming signs." *Rogers*, 486 F.3d at 243 (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Thus, remand is appropriate pursuant to *Rogers*, 486 F.3d at 250.

## V. CONCLUSION

Based upon the foregoing, the undersigned concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner to deny plaintiff DIB and SSI benefits be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall obtain testimony and reevaluate the weight to be given to the opinions of Plaintiff's treating physicians and shall provide an accurate RFC assessment.


Date:  August 11, 2009                       s/ Timothy S. Black
                                                       Timothy S. Black
                                                       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| DIANA PENDLAND, | : | Case No. 1:08-cv-485 |
| --- | --- | --- |
|  | : |  |
| Plaintiff, | : | Barrett, J. |
|  | : | Black, M.J. |
| vs. | : |  |
|  | : |  |
| MICHAEL J. ASTRUE, | : |  |
| COMMISSIONER OF | : |  |
| SOCIAL SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).